UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

WILLIAM LANGENBACHER,

    and

DONNA LANGENBACHER,

    Plaintiffs,

v.

THE REV GROUP, INC.,

    and

BANK OF THE WEST

    and

APACHE VILLAGE RV CENTER

    Defendants.

Case No.

DEFENDANT
REV GROUP, INC.'s
NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant REV Group, Inc.  hereby removes this action from the Circuit Court for St. Louis County, Missouri to this Court. In support for this removal, Defendant states as follows:

1.    On or about May 12, 2017, Plaintiffs William and Donna Langenbacher filed a lawsuit in the Circuit Court for St. Louis County, Missouri against REV Group, Inc., Bank of The West and Apache Village RV Center in a matter styled *WILLIAM LANGENBACHER and DONNA LANGENBACHER, Plaintiffs, v. THE REV GROUP, INC., D/B/A THE REV GROUP, LLC, D/B/A REV RECREATIONAL GROUP, INC., D/B/A*

1

*FLEETWOOD RV, BANK OF THE WEST and APACHE VILLAGE RV CENTER; Cause No.: 17SL-CC01729.*

2.      On June 15, 2017 Plaintiffs filed their First Amended Petition in the case. The First Amended Petition consists of allegations that Plaintiff sustained damages resulting from violation of the Missouri Merchandise Practices Act, breach of contract, breach of express warranties, breach of implied warranties of fitness and merchantability under the Uniform Commercial Code, and cancellation of the purchase agreement and damages pursuant to the Magnuson-Moss Warranty Act against the various defendants.

3.      28 U.S.C. § 1446(a) requires that a copy of all process, pleadings and orders served upon this Defendant be attached.  In this case, no process, pleadings or orders have been served on REV Group, Inc. Nevertheless a copy of the First Amended Petition that was obtained from Plaintiff's Counsel other than through service of process, is attached hereto as Exhibit A.

4.      This action falls under the Court's original jurisdiction on the basis of a federal statutory claim under the Maguson-Moss Warranty Act 15 U.S.C. § 2310 and the amount claimed as damages in correspondence from plaintiff's counsel is $132,174.53. See Exhibit B hereto.

5.       This Notice of Removal is filed within thirty (30) days of receipt of the First Amended Petition by this Defendant, and, accordingly, is timely under 28 U.S.C. § 1446(b).

6.      Pursuant to 28. U.S.C. § 1446(b)(2)(A) and (C) the all other defendants in this case, namely, Bank Of The West and Apache Village RV Center, consent to this removal.  A copy of their consent is attached hereto as Exhibit C.

7. Venue of this removal is proper under 28 U.S.C. § 1441(a) as this Court is the United States District Court for the district and division corresponding to the place where the state court action was pending.

Pursuant to 28 U.S.C. §1446(d), written notice of the removal of this action has been simultaneously provided to Plaintiff's counsel, and a Notice to Clerk of Removal has been simultaneously filed with the Circuit Court of St. Louis County, Missouri.

WHEREFORE, Defendant REV Group, Inc. does hereby remove the above-captioned action from the Circuit Court of Saint Louis County, State of Missouri, and further requests that further proceedings be conducted in this Court as provided by law.

Respectfully submitted,

WAITS, BROWNLEE & HOOP

/s/Timothy R. Brownlee
Timothy R. Brownlee, MO. Bar #39704
Rita L. Hoop, MO. Bar #40835
401 W. 89th Street
Kansas City, MO 64114
Ph: (816) 363-5466
Fax: (816) 333-1205
tbrownlee@wbbhj.com
rhoop@wbbhj.com

ATTORNEYS FOR DEFENDANT
REV GROUP, INC.

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on 8th day of September, 2017, a true and correct copy of the foregoing was delivered via electronic mail or mailed via U.S. Mail, postage-pre-paid, to:

Karl W. Dickhaus
GUSDORF LAW FIRM, LLC
9666 Olive BLVD, Ste. 211
St. Louis, MO 63132
kdickhaus@attystl.com
ATTORNEY FOR PLAINTIFF


/s/Timothy R. Brownlee____
ATTORNEY FOR DEFENDANT

LANGENBACHER v. REV GROUP, INC. et al.
NOTICE OF REMOVAL

EXHIBIT A
FIRST AMENDED PETITION

IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY
STATE OF MISSOURI
CIRCUIT COURT DIVISION

| | |
|---|---|
| WILLIAM LANGENBACHER,<br><br>     and<br><br>DONNA LANGENBACHER,<br><br>        Plaintiffs,<br><br>     v.<br><br>THE REV GROUP, INC., D/B/A THE REV<br>GROUP, LLC, D/B/A REV RECREATIONAL<br>GROUP, INC., D/B/A FLEETWOOD RV<br>**SERVE:     Registered Agent**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>BANK OF THE WEST<br>SERVE:     **Registered Agent**<br>**CT Corporation System**<br>**120 S. Central Ave., Ste. 400**<br>**St. Louis, MO 63105**<br><br>APACHE VILLAGE RV CENTER<br>**SERVE:     Registered Agent**<br>**John L. Meyer**<br>**9001 Dunn Road**<br>**Hazelwood, MO 63042**<br><br>        Defendants. | **Cause No.:  17SL-CC01729**<br><br>**Division:  DIV 17**<br><br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED PETITION

COMES NOW, Plaintiffs Donna and William Langenbacher (hereinafter

collectively the "Langenbachers") and for their claims against Separate Defendants THE

REV GROUP INC., D/B/A The REV Group, LLC, D/B/A REV Recreational Group,

59139

Inc., D/B/A Fleetwood RV (hereinafter "REV"); Apache Village, Inc. D/B/A Apache

Village RV Services Center (hereinafter "Apache Village"); and Bank of the West

(hereinafter "Bank of the West") and state to the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1)      At all times relevant herein, Langenbachers were individuals, husband and

wife, and residents of Franklin County, Missouri residing at 3702 Doc McHugh Road,

Pacific, Missouri 63069.

2)      At all times relevant herein, Defendant REV was a Delaware corporation,

in good standing, with its principal place of business located at 111 East Kilbourn

Avenue, Milwaukee, WI 53202, operating in the State of Missouri through its authorized

dealer network, which included Apache Village.

3)      At all times relevant herein, Apache Village, Inc. was a Missouri

Corporation, duly formed and in good standing, with its principal place of business

located at 9001 Dunn Road, Hazelwood, MO 63042 located in St. Louis County,

Missouri.

4)      At all times relevant herein, Apache Village was a licensed dealer

authorized to sell new vehicles to the public by the Missouri Department of Revenue.

5)      At all times relevant herein, Apache Village RV Service Center was a

registered fictitious name belonging to the owner and registered agent of Apache Village,

John L. Meyer, Missouri Registration Number X001201844. Hereinafter references to

Apache Village shall include both the corporation and the registered fictitious name of

Apache Village RV Service Center.

6)      At all times relevant herein Bank of the West was a California bank, duly authorized to conduct business in Missouri through the Missouri Secretary of State, in good standing, with its principal offices located in San Francisco, California.

7)      On or about March 26, 2015 the Langenbachers and Apache Village entered into that certain Retail Installment Sales Contract (hereinafter "RISC") for the sale of a 2015 Fleetwood Storm, Vehicle Identification Number 1F65F50YXE0A15052, manufactured and sold by REV through its authorized dealer network (hereinafter the "Storm"). A true and correct copy of the RISC is attached hereto as **Exhibit A** and incorporated herein by this reference as though fully set forth.

8)      The negotiation and purchase of the Storm by the Langenbachers and all related components of the transaction were conducted at Apache Villages sales facility located in Saint Louis County, Missouri.

9)      After execution of the RISC, Apache Village assigned all of its right, title and interest in the RISC to Bank of the West.

10)     Jurisdiction is proper in this Court pursuant to § 478.070 RSMo.

11)     Venue is proper in this Court pursuant to § 508.010.4 RSMo. and § 508.010.2(2) RSMo.

## ALLEGATIONS COMMON TO ALL COUNTS

12)     Adam Clark, an employee of Apache Village, having express authority to act on behalf of Apache Village, duly executed the RISC.

13)     The Langenbachers purchased the Storm in a time sales transaction, and titled the Storm with Bank of the West listed as the lien holder on the Missouri certificate

of title.  A true and correct copy of the title application and title issued are attached hereto as **<u>Exhibit B</u>** and incorporated herein by this reference as though fully set forth.

14)     Apache Village entered into the RISC and delivered the Storm in its capacity as a registered dealer of REV.

15)     REV provided a warranty, in the form attached hereto as **<u>Exhibit C</u>** and incorporated herein by this reference, with every new Storm sold through its dealer network, including sales through Apache Village (hereinafter the "Manufacturer's Warranty).

16)     In addition to the Manufacturer's Warranty, Apache Village sold the Langenbachers an extended warranty in the form of **<u>Exhibit D</u>** attached hereto and incorporated herein by this reference as though the same were fully set forth (hereinafter the "Extended Warranty").

17)     After purchasing the Storm the Langenbachers began to have problems almost immediately.  On April 13, 2015, the Langenbachers returned the Storm to Apache Village for repairs after only 527 miles of use, as they were experiencing a multitude of problems. The Langenbachers told Apache Village service personnel that:

     a.   the Storm shook constantly when operating;

     b.   the generator was hard to start, sometimes taking 4-5 starts to operate;

     c.   the air conditioning under the front dash drips onto the carpet;

     d.   the microphone on the dash keeps coming loose and swinging;

     e.   the driver could feel a draft of air when driving due to an improper sealing of the cabin;

     f.   the steps on the Storm would extend while driving;

59139

g.   the ceiling air conditioning vent broke near the bathroom;

h.   the dash panel for fuses falls in transit and the supplied Velcro would
     not hold it;

i.   the rear tire air valves could not be reached to fill the tires in their
     current configuration;

j.   the slide-out would not stay stowed and tore up the rear of the driver's
     seat;

k.   the bathroom door knob face needed to be secured and kept coming
     apart;

l.   the exterior compartment doors were rubbing the paint away;

m.   the front television rattled horribly during driving;

n.   the television next to the dinette near the bathroom did not receive any
     signal; and

o.   the television in the bedroom would not lock into the closed position.

18)   Apache Village said that they would fix the issues identified by the

Langenbachers, including without limitation:

a.   the shaking of the Storm during operation;

b.   the problems with the generator;

c.   the microphone on the dash;

d.   the draft on the driver's side;

e.   locating and repairing the leak under the dash on the driver's side;

f.   the fuse dash panels that fell in transit;

g.   access to the inflation mechanism for the interior tires;

59139

    h.  the slide-out and the resulting damage to the driver's seat;

    i.  the bathroom door knob face;

    j.  the exterior compartment doors that were rubbing the paint away;

    k.  the problem with the excessive rattling of the front television while the Storm was being driven;

    l.  the television next to the dinette near bathroom so that it would receive signal and be operable;

    m.  the television in the bedroom to insure it could be locked into the closed position.

19)     However, when the Storm was returned to the Langenbachers, Apache Village had in fact failed to correct the following items identified when the Storm was initially brought in for repairs, despite Apache Village having the Storm for twenty-two (22) days - during which time it was unavailable for use by the Langenbachers:

    a.  The constant shaking of the Storm during operation; or

    b.  The problems with the generator; or

    c.  The draft on the driver's side of the Storm; or

    d.  The falling of the fuse panel during operation; or

    e.  The leak under the dash from the air conditioning; or

    f.  The various problems with the televisions installed in the Storm, with the exception of replacing the television near the dinette that did not receive the cable signal.

59139

20)     Less than ten (10) days after picking up the Storm from its initial repairs, the Langenbachers were again forced to bring the Storm in for service on June 15, 2015 – and informed Apache Village service personnel of the following issues, among others:

    a.   The Storm still shook badly during operation;

    b.   The air conditioning was still dripping under the front dash, soaking the driver's feet and the carpet in the front of the Storm;

    c.   The televisions still shook loudly and continuously during operation;

    d.   The generator still did not work properly, including requiring manual priming in order to run at all;

    e.   The shower was leaking into the cabin and could not be used;

    f.   The refrigerator was draining into the cabin;

    g.   The front shade would not open and close properly;

    h.   The step on the side door still opened while the Storm was being operated.

21)     This time Apache Village told the Langenbachers that the shaking was due to a chassis problem (despite having taken the Storm to Shamel Auto to have the tires spin balanced prior to returning the Storm to the Langenbachers on June 15, 2015) and that it was up to the Langenbachers to fix it. Apache Village suggested taking it to a Ford dealership – saying that it was a Ford chassis and therefore was Ford's problem.

22)     Apache Village knew, or should have known, that these statements implying that the chassis problems were somehow not covered by the warranties on the Storm, or that they were the responsibility of third parties and strangers to the sale of the Storm, were false when made, and that the chassis was an integral part of the Storm and

covered by the express warranty, as well as by the Uniform Commercial Code and common-law warranties of fitness, merchantability and the extended warranty sold to the Langenbachers with the Storm.

23)    These problems persisted, with the Langenbachers relying on Apache Villages representations that they would repair the Storm, only to have the same or related problems re-occur when the promised repairs were either not completed or were completed in an un-workmanlike manner, which failed to solve the problems with the Storm.

24)    From the date of purchase to the date of this Petition, the Langenbachers returned the Storm to Apache Village on at least 11 separate occasions, leaving the Storm in the possession of Apache Village for 209 days out of the first 400 days of ownership – which 400 day period included winter months when Recreational Vehicles like the Storm are not normally operated.

25)    When the Langenbachers brought these issues to the attention of Apache Village and then REV, they were told that these were their problems – and that neither Apache Village nor REV was responsible.

26)    On their final trip with the Storm, the Langenbachers experienced the front of the Storm dash separating from the carriage of the Storm, letting in excessive air underneath the windshield and compromising their safe operation of the Storm.

27)    As a result of the continuing and substantial problems with the Storm, the Langenbachers have lost all confidence in its roadworthiness and safety, and in Apache Village and/or REV Groups ability to repair the Storm.

## COUNT I – VIOLATION OF THE MISSOURI MERCHANDISE PRACTICES ACT ("MMPA")

## Apache Village, REV and Bank of the West

28)     The Langenbachers re-state and incorporate by this reference the allegations contained in paragraphs 1-27 of this Petition herein as though the same were fully set forth.

29)     At all times relevant herein, the Langenbachers were individual consumers.

30)     The Langenbachers purchased the Storm primarily for their personal, household and family use.

31)     Defendants engaged in numerous unlawful practices in connection with the sale of the Storm, to include without limitation:

    a.  Representing that the Storm was a quality and reliable recreational vehicle when in fact they knew, or reasonably should have known, that the problems experienced by the Langenbachers were common on this particular recreational vehicle; and

    b.  Representing that they would repair the issues with the Storm when they lacked the expertise, knowledge or desire to address all but the symptoms of the problems, such as placing padding and additional tie-downs to the vehicle components when the shaking of the Storm would continue to result in similar or identical failures; and

    c.  Representing to the Langenbachers that the chassis problems with the Storm were the responsibility of the chassis manufacturer when they knew this was untrue; and

    d.   Keeping the Storm for extended periods to have maintenance and repairs performed that they knew or reasonably should have known would not solve the underlying issues with the Storm; and

    e.   Failing to replace the Storm or rescind the transaction after it was apparent that the Storm could not be placed in the condition represented on sale; and

    f.   Representing to the Langenbachers that the Manufacturer's Warranty had expired when in fact the substantial periods during which the Storm was in for service in fact caused the warranty to period to be extended; and

    g.   Performing repairs, such as the spin balancing of the tires, that were designed to mislead the Langenbachers as to the true cause of the shaking and related problems with the Storm; and

    h.   Failing to honor the warranties sold to the Langenbachers on the Storm.

32)    The Langenbachers suffered an ascertainable loss of money and/or property as a result of Defendant's unlawful practices, which loss of money and/or property exceeds Twenty-Five Thousand and NO/00 Dollars ($25,000.00) exclusive of the costs of this action, to include without limitation the following:

    a.   the amount of payments for the Storm, tendered to Bank of the West; and

    b.   Incurring expenses for the attempted repair of the Storm resulting from its mechanical infirmities; and

c.  The cost of insurance, taxes, license and registration fees, fuel and other expenses for the operation of the Storm, which despite their best efforts did not perform in the manner for which it was sold; and

d.  Incurring expenses for alternative transportation necessitated by the Langenbachers' inability to use the Storm for its intended purpose; and

e.  Paying for accommodations because the Storm could not be used due to the problems with its electrical, mechanical and plumbing systems; and

f.  Loss of the use and enjoyment of the Storm, and the resulting loss in the opportunities for travel and family activities due to the unavailability of the Storm.

g.  Garden variety emotional distress arising as the natural consequence of traveling in a vehicle when it becomes apparent that the vehicle is no longer safe to drive or that the vehicle may fail at any time placing you and the people travelling with you in immediate peril.

33)  The acts of Apache Village and REV were outrageous and done with actual malice and/or reckless disregard for the rights of the Langenbachers, making the imposition of punitive damages appropriate in order to punish the actions of Apache Village and to deter others, similarly situated from like conduct, to include without limitation:

a.  Failing to disclose the existence of similar problems across the Storm product line; and

b. Failing to repair the known cause of the problems with the Storm to include the chassis issues, instead only addressing the consequences of the design flaws in the Storm; and

c. Telling the Langenbachers that problems covered under the warranties governing the sale of the Storm were not the responsibility of the Defendants, but were the responsibility of unrelated third parties; and

d. Permitting the Langenbachers to take a vehicle that was unsafe to drive on public roads and highways, thereby endangering not only the Langenbachers but other innocent drivers and individuals.

34)    Bank of the West, as the assignee of Apache Village stands in the shoes of Apache Village pursuant to 16 CFR 433 and Missouri law, and is jointly and severally liable for the actions of its assignor, Apache Village.

35)    The MMPA permits an injured consumer to recover not only its actual damages and punitive damages, but provides for the recovery of the reasonable attorney fees incurred by the consumer in prosecuting the action, as well as for injunctive relief.

36)    Upon information and belief, the acts of Apache Village and REV are continuing and ongoing, and therefore injunctive relief is required both to keep Apache Village and REV from further irreparably injuring the rights of consumers such as the Langenbachers, and to protect other Missouri consumers from becoming the victims of similar practices, for which there exists no adequate remedy at law.

WHEREFORE, the Langenbachers pray this Honorable Court for an Order and Judgment, in their favor and against Defendants jointly and severally, providing the

following relief, along with such other and further relief as this Court deems just and equitable in the circumstances:

a) Actual damages, in an amount demonstrated at the trial of this matter, which amount exceeds Twenty Five Thousand and No/00 dollars ($25,000.00) exclusive of interest, costs and fees; and

b) Punitive damages, in an amount sufficient to punish the conduct of Defendants and to deter others similarly situated from like conduct; and

c) Injunctive relief, ordering Defendants to refrain from the sale of any vehicle, to any person, without fully complying with the laws of the State of Missouri governing such sales, to include without limitation the sale of vehicles unfit for the purposes for which they are sold; and

d) For the Langenbachers costs incurred in this action, to include without limitation their reasonable attorney fees incurred.

## COUNT II – BREACH OF CONTRACT (the RISC)
### Apache Village and Bank of the West

37) The Langenbachers re-state and incorporate by this reference the allegations contained in paragraphs 1-36 of this Petition herein as though the same were fully set forth.

38) The Langenbachers and Apache Village entered into a contract for the purchase of the Storm (the RISC), a true and correct copy of which is attached hereto as **Exhibit A**.

39) The RISC was duly executed by an authorized agent of Apache Village on the date reflected on the RISC.

40) Apache Village entered into the RISC as a duly licensed and authorized

agent of separate defendant REV.

41)     Apache Village assigned all of its right, title and interest under the RISC to Bank of the West for consideration.

42)     The Langenbachers fully complied with all of their obligations pursuant to the RISC, by and among other means, making the payments required, keeping the Storm insured, licensed and properly registered with the Missouri Department of Revenue and otherwise complying with the terms and conditions of the RISC.

43)     Defendants breached the RISC by among other means delivering to the Langenbachers a vehicle unfit for the purpose for which it was sold, and refusing to either replace the Storm or render it in a serviceable condition upon request.

44)     The Langenbachers were directly and proximately damaged by the Defendant's breach, in and among other ways by making payments on a non-conforming vehicle, and by incurring repair expenses, lodging and related expenses, as a result of Defendant's breach. The Langenbacher's damages, which consist of the value of the Storm and the obligations related thereto, as well as the amounts spent as a direct and proximate result of the breach for lodging, repairs, and other related expenses are currently $145,00.00, which amounts continue to accrue.

45)     The Langenbachers made demand upon Defendants to cure the breach, or in the alternative to rescind the sale as a result of the breach, but Defendants have refused and continue to refuse to perform under the RISC.

WHEREFORE, The Langenbachers pray this Honorable Court for an Order and Judgment, in their favor and against Defendants, jointly and severally for actual damages as proven at trial, for incidental damages directly and proximately incurred as a result of

Defendant's breach of the RISC, for the costs of this action and for such other and further relief as this Court deems just and proper in the circumstances.

## COUNT III – BREACH OF THE EXPRESS WARRANTIES
### Apache Village, REV and Bank of the West

46)     The Langenbachers re-state and incorporate by this reference the allegations contained in paragraphs 1-45 of this Petition herein as though the same were fully set forth.

47)     In connection with the purchase of the Storm the Langenbachers were provided two separate express warranties: 1) the Manufacturer's Warranty provided with all new Storm vehicles sold; and 2) the Extended Warranty sold by Apache Village to the Langenbachers.

48)     Pursuant to the terms of the Manufacturer's Warranty REV and their licensed dealer, Apache Village promised to repair any defects occurring in the Storm during the one-year warranty period. Specifically, the Manufacturer's Warranty provided:

> By agreement with the manufacturer, the dealer is obligated to maintain the motor home prior to retail sale, to perform a detailed pre-delivery inspection and to repair or replace any parts necessary to correct defects in material or workmanship.

49)     The Langenbachers complied in all respects with their obligations under the Manufacturer's Warranty.

50)     REV's dealer – Apache Village – despite timely and repeated demand by the Langenbachers, failed to repair or replace any parts necessary to correct defects in material and workmanship on the Storm, and therefore breached the Manufacturer's Warranty.

51) The Langenbachers were injured as a direct and proximate result of Defendants breach of the Manufacturer's Warranty, to include without limitation by ending up with a vehicle that was not suitable for the purposes for which it was purchased and which was largely unavailable to the Langenbachers during the first year of ownership due to the failure of Apache Village – on behalf of REV – to provide the promised services, which damages exceed Twenty-Five Thousand and NO/00 Dollars ($25,000.00) exclusive of the costs of this action.

52) In addition to the Manufacturer's Warranty, Apache Village also sold the Langenbachers an Extended Warranty covering the Storm for a period of 84 months from the expiration of the Manufacturer's Warranty.

53) Because the Apache Village was unable to correct the serious defects in the Storm under the Manufacturer's Warranty, the provisions of the Extended Warranty were of no value – as the Storm could not be repaired by Apache Village, as demonstrated by their multiple repeated effects. Apache Village thus breached the covenant of good faith incumbent in every contract of sale to a consumer in Missouri, rendering them in breach of the Extended Warranty.

54) The Langenbachers complied in all respects with their duties under the Extended Warranty, to include without limitation paying the full purchase price and properly maintaining the Storm during the limited periods they possessed it.

55) The Langenbachers were damaged as a direct and proximate result of Apache Village's breach of the Extended Warranty in the amount paid for the Extended Warranty, which was worthless when provided.

WHEREFORE, The Langenbachers pray this Honorable Court for an Order and

Judgment, in their favor and against Defendants, jointly and severally for actual damages as proven at trial, for incidental damages directly and proximately incurred as a result of Defendant's breach of the Manufacturer's Warranty, for the full amount paid for the Extended Warranty, for the costs of this action and for such other and further relief as this Court deems just and proper in the circumstances.

### COUNT IV – BREACH OF THE IMPLIED WARRANTIES OF FITNESS AND MECHANTABILITY UNDER THE UNIFORM COMMERCIAL CODE
### Apache Village, REV and Bank of the West

56)    The Langenbachers re-state and incorporate by this reference the allegations contained in paragraphs 1-55 of this Petition herein as though the same were fully set forth.

57)    When the Langenbachers went to Apache Village they were told by Apache Village's salesman that the Storm was a "significant step up" from their previous recreational vehicle, and were given promotional materials from REV which made the following additional claims regarding the Storm:

  a.  Quality: There's no cutting corners. Skilled craftsmen build every Fleetwood RV for maximum durability and longevity.

  b.  Warranty. Enjoy your RV adventure with the peace of mind that comes with our trusted RV OwnerCare warranty and industry leading customer service.

A true and correct copy of the REV promotional brochure provided to the Langenbachers is attached hereto as **Exhibit E** and incorporated herein by this reference as though the same were fully set forth.

58)     Upon information and belief, both Apache Village and REV were aware of a myriad of problems with the Storm, and numerous customer complaints regarding its poor construction.

59)     Apache Village's and REV's representations regarding the quality and reliability of the Storm were material inducements causing the Langenbachers to purchase the Storm – as they were only interested in a reliable, safe and comfortable vehicle.

60)     Contrary to the representations of both Apache Village and REV, the Storm was not a safe and reliable vehicle, had structural issues related to its chassis and other structural elements, had design flaws and construction flaws that made it unpleasant to drive and unsafe. The Storm is and was the antithesis of a quality vehicle.

61)     Apache Village is a merchant with respect to the sale of vehicles like the Storm, and was at all times relevant herein, licensed as an automobile dealer by the State of Missouri.

62)     REV is a manufacturer of the Storm and is a merchant with respect to the Storm.

63)     The Langenbachers are, and were at all times relevant herein, individual consumers whose purchase of the Storm was for their personal, family and household use.

64)     Upon learning that the Storm could not be reliably operated, the Langenbachers timely notified Apache Village, who would not or could not correct the deficiencies in the Storm.

65)      In addition, the Langenbachers requested that Apache Village notify REV of the problems with the Storm – however it is not known if in fact Apache Village provided such notification.

66)      The Langenbachers then timely notified REV directly of the problems with the Storm and requested that REV correct the deficiencies or refund the Langenbachers purchase price, along with their losses associated with their ownership of the Storm as hereinabove set forth.

67)      As a result of the significant problems with both the Storm and the customer service accompanying their attempts to have the Storm's problems corrected, the Langenbachers lost confidence in the Storm, Apache Village and REV.

68)      The Langenbachers were damaged as a result of Apache Village's and REV's actions, including without limitation by paying for a vehicle which was worthless by virtue of its numerous mechanical infirmities, loss of use of the Storm, incidental expenses and out of pocket expenses associated with the failure of the Storm to perform as promised, mental anguish and distress and the loss of opportunities to travel and fulfill commitments to friends and family previously made, which damages exceed Twenty Five Thousand and No/00 Dollars ($25,000.00) exclusive of interest and costs.

69)      Bank of the West, as the assignee of Apache Village, steps into Apache Village's shoes and is jointly and severally liable for the failure of the Storm to conform to its represented purpose.

WHEREFORE, the Langenbachers pray this Honorable Court for an Order and Judgment, in their favor and against Apache Village, REV, and Bank of the West, jointly and severally, for their actual damages as demonstrated at trial, for statutory damages

under the Uniform Commercial Code – Article 2, for the costs of this action and for such other and further relief as this Court deems just and proper in the circumstances.

### COUNT IV – CANCELLATION OF THE PURCHASE AGREEMENT AND DAMGES PURSUANT TO  THE MAGNUSON-MOSS WARRANTY ACT
#### Apache Village, REV and Bank of the West

70)      The Langenbachers re-state and incorporate by this reference the allegations contained in paragraphs 1-69 of this Petition herein as though the same were fully set forth.

71)      Count IV is an action against all Defendants brought pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., specifically § 2310(d) for actual damages and to cancel the contract pursuant to the Langenbachers' rejection, or in the alternative, revocation of acceptance, for Apache Village's and REV's breach of the implied warranties that accompanied the sale of the Storm.

72)      The Storm is a consumer product, as that term is defined at 15 U.S.C. § 2301(l), which was manufactured after July 4, 1975.

73)      Defendant Apache is a warrantor, as that term is defined at 15 U.S.C. § 2301(5).

74)      Defendant REV is a warrantor, as that term is defined at 15 U.S.C. § 2301(5).

75)      The Langenbachers are consumers, as that term is defined at 15 U.S.C. § 2301(3).

76)      Defendant REV has no dispute resolution mechanism which meets the requirements of 16 C.F.R. Part 703, promulgated by the Federal Trade Commission ("FTC") pursuant to 15 U.S.C. § 2310(a)(2).

59139

77)     The Langenbachers gave both Apache Village and REV a reasonable opportunity, on numerous occasions, to cure its failure to comply with its warranties and neither Apache Village nor REV provided such a cure.

78)     The Langenbachers were directly and proximately damaged as a result of Defendant's actions, in and among other means by paying for a vehicle they could not use, incurring expenses for the acquisition of alternative transportation, expenses for repairs to a vehicle that had no value, and incurring expenses for the validation of rights to which the Langenbachers were already entitled, to include without limitation legal fees in connection with this transaction.

79)     Bank of the West, as the assignee of Apache Village, steps into the shoes of its assignor, and is jointly and severally liable for the actions of Apache Village as alleged herein.

WHEREFORE, the Langenbachers pray this Honorable Court for an Order and Judgment in their favor and against REV, Apache Village, and Bank of the West, jointly and severally, for the following relief:

a)  Declaring that the RISC governing the sale of the Storm is hereby cancelled;

b)  In the event the Court does not cancel the RISC in its entirety, declaring the Langenbachers' continuing obligations under the RISC cancelled; and

c)  For actual damages including without limitation the purchase price paid for the Storm under the RISC to include without limitation any amounts paid for the extended warranty, any and all interest charged, fees, taxes and other amounts paid for or as a result of the purchase of the Storm; and

d)  For the incidental damages suffered by virtue of the purchase of the Storm, to

include without limitation the insurance paid for the Storm's protection,

property and sales taxes incurred, licensing and registration fees incurred and

out-of-pocket costs incurred as a result of the Storm's failure to perform as

demonstrated at trial; and

e)  For actual damages directly and proximately arising by virtue of the

Langenbachers' loss of use of the Storm, including without limitation amounts

directly and indirectly attributable to the inability to travel on the dates

anticipated due to the unavailability of the Storm resulting from the breach of

the warranties thereon; and

f)  For the costs of this Action, to include without limitation their reasonable

attorney fees incurred; and

g)  For such other and further relief as this Court deems just and proper in the

circumstances.

Respectfully Submitted,

**GUSDORF LAW FIRM, LLC**

/s/ Karl W. Dickhaus
Karl W. Dickhaus, MBE 47951
9666 Olive BLVD, Ste. 211
St. Louis, MO 63132
Telephone (314) 942-6571
Facsimile  (314) 942-6567
kdickhaus@attystl.com
Attorneys for Plaintiff
Our File No. 59139

LANGENBACHER v. REV GROUP, INC. et al.
NOTICE OF REMOVAL

EXHIBIT B
CORRESPONDENCE FROM PLAINTIFF'S COUNSEL

# GUSDORF LAW FIRM, LLC

ATTORNEYS AT LAW
9666 Olive Blvd., SUITE 211
ST. LOUIS, MISSOURI 63132
314-942-6571
314-942-6567 Fax

**RECEIVED**

JAN 3 1 2017

REV Recreation Group #91

RANDALL E. GUSDORF*
MICHAEL L. SOKOLIK
KARL W. DICKHAUS
JESSICA M. REIS

*ALSO LICENSED IN ILLINOIS

January 24, 2017

**Via U.S. Mail, Certified, Return Receipt Requested**
David A. Matzenger
Dispute Resolution Administrator
REV Recreation Group
1010 W. Commerce Drive
Decatur, IN 46733

**Re: William E. and Donna J. Langenbacher – Purchase of 2015 Fleetwood Storm**

Dear Mr. Matzenger:

I have reviewed your offer dated November 22, 2016 with my clients, who seriously considered whether it presented a viable option. However, given the magnitude of the problems with the 2015 Fleetwood Storm -- and the difficulty in getting those issues acknowledged -- much less addressed -- the Langenbachers respectfully decline. There is simply no assurance that a replacement vehicle would not have the same myriad of issues as its predecessor. That, along with the fact that the only Fleetwood authorized dealer within 200 miles of the Langenbachers is Apache Village – a dealer that can at best be described as unresponsive and indifferent – makes the prospect of owning another Fleetwood unattractive.

My clients will accept the following -- which represents our final offer to resolve this matter short of litigation: The full purchase price of the 2015 Fleetwood Storm, to include all licensing, inspection, title and property taxes assessed, their incidental expenses incurred – to include the expenses of repeated delivery of the vehicle to the dealer for repairs, their attorney fees expended and the loss of use of the vehicle occasioned by its failure to function – even minimally – when they took it to vacation. An itemized listing of the damage amounts is attached to this letter as **Exhibit A.** If you are not willing to correct this issue by repurchasing the vehicle, please let me know and we will proceed accordingly. If we do not have a response by February 3, 2017 at 5:00 p.m. CST, we will consider that a refusal of our offer to resolve this matter.

Should you have any further questions or concerns regarding this matter, please do not hesitate to contact me directly.

Very truly yours,

Karl W. Dickhaus

Attachment

Cc:    William and Donna Langenbacher

**EXHIBIT A**

| Item | Number | Amount | Total |
|------|--------|--------|-------|
| Purchase Price | | $85,254.00 | $85,254.00 |
| Monthly Payments | | $673.18 | $13,261.65 |
| Insurance | | $330.00 | $6,501.00 |
| Attorney Fees | | $5,200.00 | $5,200.00 |
| Incidental Expenses | | $4,507.89 | $4,507.89 |
| Loss of Use, Etc... | | $4,560.00 | $4,560.00 |
| Registration | | $231.20 | $231.20 |
| Sales Tax | | $5,850.90 | $5,850.90 |
| Dealer Charges | | $0.00 | $0.00 |
| Inconvenience | | $6,807.89 | $6,807.89 |
| | | **Total** | $132,174.53 |

LANGENBACHER v. REV GROUP, INC. et al.
NOTICE OF REMOVAL

EXHIBIT C
CONSENT OF ALL OTHER DEFENDANTS



# EVANS & DIXON L.L.C.
## ATTORNEYS AT LAW

Metropolitan Square | 211 North Broadway, Suite 2500 | St. Louis, Missouri 63102
(314) 621-7755 | Fax (314) 621-3136

*Brian R. Shank*
*Member*
*314-552-4051 phone*
*314-884-4451 fax*
*bshank@evans-dixon.com*

September 6, 2017

Mr. Timothy R. Brownlee, Esq.                    Via Email: tbrownlee@wbbhj.com
Waits Brownlee Berger Hoop & Johnston
401 W. 89th Street
Kansas City, MO 64114

RE:     *Langenbacher v. REV Group, et al.*

Dear Mr. Brownlee:

As you know, I represent defendants Apache Village, Inc., d/b/a Apache Village RV Center and Bank of the West in the above-referenced lawsuit pending in St. Louis County, Missouri.

Both defendants have authorized me to consent to your client's removal of this case to the United States District Court for the Eastern District of Missouri. Please consider this correspondence evidence of such consent.

Thank you for your continued courtesies.

Very truly yours,

Brian R. Shank

St. Louis
Missouri | Kansas | Illinois | Nebraska | Iowa
www.evans-dixon.com